# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
### TALLAHASSEE DIVISION

**HARRIET TUBMAN FREEDOM
FIGHTERS CORP., et al.,**

     *Plaintiffs,*

**v.**                                             Case No.:  **4:21cv242-MW/MAF**

**LAUREL M. LEE, in her official
capacity as Florida Secretary of
State, et al.,**

     *Defendants,*

**and**

**NATIONAL REPUBLICAN
SENATORIAL COMMITTEE and
REPUBLICAN NATIONAL
COMMITTEE,**

     *Intervenor-Defendants.*
_____/

## ORDER ON MOTIONS TO DISMISS

This is a voting rights case. Plaintiffs are three organizations and an individual voter who challenge two new provisions of Florida law. *First*, Plaintiffs allege that a new voter-registration-warning requirement compels third-party voter registration organizations like Plaintiff Harriet Tubman Freedom Fighters Corp. ("HTFF") "to convey a government message which undermines the organizations' own private speech and associational activity," in violation of the First and Fourteenth

Amendments. ECF No. 44 ¶ 2. *Second*, Plaintiffs Paralyzed Veterans of America Florida Chapter ("PVAF"), PVAF Central Florida Chapter, and Steve Kirk allege that recent changes to Florida's voting laws directly conflict with federal law and deny disabled voters their right to assistance under section 208 of the Voting Rights Act. *Id*. ¶ 159. Plaintiffs have sued Florida's Secretary of State, Laurel Lee, Florida's Attorney General, Ashley Moody, and 42 of Florida's 67 Supervisors of Elections. Defendant Lee and Defendant Moody have moved to dismiss Plaintiffs' amended complaint. ECF Nos. 79 and 130.[1]

This Court has considered, without hearing, the motions to dismiss, all attachments thereto, and Plaintiffs' responses in opposition to the motions, ECF Nos. 119 and 147. For the reasons set out below, the motions are **GRANTED in part** and **DENIED in part**.

---

[1] On June 16, 2021, Defendant Lee moved to consolidate this case with other election cases before this Court. ECF No. 5. This Court granted the motion in part and consolidated this case with others for *discovery purposes only*. ECF No. 8. This Court specifically noted that "[a]ny motions to dismiss, for summary judgment, or other motions not related to discovery must be filed in its corresponding case, *not* in the parent case." *Id*. at 2 (emphasis in original). However, Defendant Lee ignored this Court's order and filed an "omnibus" memorandum with each motion to dismiss in each of the consolidated election cases before this Court. Accordingly, this Court will clarify its prior directive. Even if you file a separate motion for each case, you must also file a separate memorandum addressing *only* that case. Otherwise, going forward, this Court will deny without prejudice any substantive motions raising "omnibus" arguments in the same manner as Defendant Lee's "omnibus" memorandum in support of her motions to dismiss.

I

Plaintiffs filed their amended complaint on July 15, 2021.[2] They allege four counts against Defendants Lee and Moody (Counts I–IV) and one count against Defendant Supervisors (Count IV). ECF No. 44. Before discussing Plaintiffs' claims in more detail, some background information regarding Plaintiffs is necessary.

A

Starting with HTFF, Plaintiffs allege that it is a non-profit corporation based in Jacksonville, Florida, that has been approved as a third-party voter registration organization in Florida. *Id*. ¶¶ 22, 27 n.1. The organization's leaders "have been passionate and tireless advocates in the Florida voting rights space for several years," including when they participated in collecting signatures for Florida's Amendment 4, helped voters to register and get-out-the-vote to ensure Amendment 4 passed, and by participating in a legal challenge to a Florida law that allegedly limited the reach of Amendment 4. *Id*. ¶ 24.

HTFF is "a charitable and educational non-profit," that "connects networks of previously disparate volunteers from non-profits across Florida and, along with other Florida voting rights organizations, engages in weekly phone banking, canvassing, and panel discussions," to "inform them about voting rights issues[.]" *Id*. ¶¶ 25–26.

---

[2] Plaintiffs Head Count, Inc., and Phyllis Resnick stipulated to dismissal of their claims against Defendants after Plaintiffs filed their amended complaint. *See* ECF Nos. 97 and 111. Accordingly, this Order only addresses the remaining Plaintiffs' claims.

Their mission is to "reach out to potential voters (potentially lower-income, people of color) affected by Florida's criminal justice system who are wary of the electoral process and being further marginalized and criminalized for participating in it[.]" *Id*. ¶ 25.

HTFF alleges that it "has received grants specifically intended for voter registration, outreach, and mobilization," and has worked with other registered voter registration organizations "to provide people with voter registration information and information about upcoming elections and ballot initiatives." *Id.* ¶¶ 28, 30.

As to PVAF, Plaintiffs allege that it is a nonprofit organization "whose mission is to improve the lives of veterans with a spinal cord injury or dysfunction and other persons with disabilities to achieve maximum health, productivity, and self-esteem in their daily lives." *Id.* ¶ 48. PVAF's Central Florida Chapter has approximately 350 members and advocates for its members on several issues related to healthcare, research, education, service-related benefits for veterans, civil rights, and maximizing its members' independence. *Id*. ¶ 49. Both PVAF and PVAF's Central Florida Chapter have members who are "disabled Floridians eligible to vote who need assistance to vote because of their disability and who do not have or want assistance from immediate family in casting a vote by mail." *Id*. ¶ 52. "[S]ome of these members prefer to select a person to assist them, such as a social worker or caregiver, who is likely to be needed by more than one other voter." *Id*.

Plaintiffs allege that "[s]ome of PVAF's members reside as in-patients at the local Veterans' Affairs facility . . . and rely on the assistance of a social worker at the facility in requesting, receiving, completing, and/or delivering their mail ballots." *Id*. ¶ 50. Those facilities that serve clients with spinal cord injuries are allegedly located in Monroe, Miami-Dade, Broward, Palm Beach, and Martin Counties, and allegedly only employ a total of four social workers. *Id*. In addition, Plaintiffs allege that only four other social workers serve VA facilities in several counties, including Saint Lucie, Okeechobee, Indian River, Brevard, Osceola, Orange, Seminole, Volusia, Lake, Marion, Flagler, Putnam, Saint Johns, Clay, Duval, Nassau, Union, Alachua, Columbia, Hamilton, Bradford, Baker, Suwanee, Lafayette, Madison, Taylor, Jefferson, Levy, Dixie, Wakulla, Leon, Franklin, Gulf, Liberty, Gadsden, Calhoun, Bay, Jackson, Holmes, Washington, Walton, Okaloosa, Santa Rosa, and Escambia. *Id*.

Finally, Plaintiff Steve Kirk is a registered voter in Deltona, Florida, a U.S. Army veteran, a quadriplegic who cannot use his hands, the treasurer for his local veterans' history museum, and the President of the PVAF Central Florida Chapter. *Id*. ¶ 53. Mr. Kirk "has always voted in person with the assistance of a hired caregiver, but he would like to vote by mail in future elections for greater convenience as he stopped driving long distances two years ago and largely relies on others for transportation." *Id*. Mr. Kirk needs "assistance at all stages of the voting

process, including marking his ballot[,]" and "[h]e prefers that his caregiver help him request, mark, and submit a mail ballot in future elections." *Id.*

B

HTFF alleges that it "conduct[s] or intend[s] to conduct voter registration drives in Florida," where "they seek to develop relationships with new voters to further promote civic engagement, including through get-out-the-vote activities and other community involvement." *Id.* ¶ 61. "Through their voter registration work," HTFF "express[es] the importance of civic engagement and political participation, particularly among politically underrepresented groups." *Id.* ¶ 64. "By ensuring people's voter registration forms are properly submitted," HTFF "ensure[s] the fullest expression of their communities['] and voters' views on issues such as government responsiveness, racial justice, and policies that promote religious tolerance and acceptance." *Id.* HTFF believes "[t]heir assistance to others in registering to vote is a political statement in and of itself: that they value the democratic process and the rights of all eligible citizens to access the franchise." *Id.*

Similarly, HTFF's engagement in voter registration activities allows them to "develop, and intend to develop in the future, associations with individuals who share their values and goals." ECF No. 44 ¶ 65. These activities "are critical to . . . [HTFF's] . . . associational rights." *Id.* ¶ 63.

Relatedly, Plaintiffs' allegations describe how Florida has regulated third-

6

party voter registration organizations and its past voter registration rules. *Id.* ¶¶ 67–80. Specifically, the amended complaint tracks the history of Florida's laws regulating organizations that conduct community voter registration activities and how some of these laws have run afoul of the Constitution and other federal laws in the past. *Id.* ¶¶ 68, 73.

Plaintiffs' amended complaint also includes a detailed description of the demographics of Florida's registered and unregistered voting-age population, noting that, as compared to White Floridians, larger percentages of Black, Asian American, and Hispanic Floridians are unregistered. *Id.* ¶ 59. Plaintiffs also allege that "[v]oter registration drives play an important role in facilitating voter registration of eligible citizens[,]" especially for voters of color who "are more likely to identify as having registered at a registration drive or at a school, hospital, or campus[.]" *Id.* ¶ 60.

C

With respect to voters with disabilities who need assistance with voting by mail, Plaintiffs allege that in the 2020 general election, "ten percent of voters with disabilities who cast a mail ballot reported needing assistance in returning their ballots," and "eight percent turned to a friend or neighbor for assistance," while "seven percent received assistance from a home health aide." *Id.* ¶ 106. In addition, Plaintiffs allege that "[a] quarter of voters with vision impairments and 22 percent of voters who require assistance in their daily routines needed help voting by mail."

7

*Id.* "The rate of voters with disabilities who experienced difficulty voting by mail in the 2020 General Election was more than double that of voters without disabilities." *Id.* ¶ 107.

In addition, Plaintiffs allege that federal law guarantees the right to assistance with any "action necessary to make a vote effective in any primary, special, or general election," when a voter is blind, disabled, or unable to read or write. *Id.* ¶ 109. But one of the Florida provisions at issue limits "volunteer assistance" with distributing, ordering, delivering, requesting, collecting, and physically possessing to only two vote-by-mail ballots per election in addition to the volunteer's own ballot or an immediate family member's ballot. Plaintiffs assert this challenged provision specifically "extends the limitation [on assistance to individuals who vote by mail] to individuals regardless of pecuniary or other benefit," and could even "encompass simple acts like taking the voter's ballot from a mailbox to the voter's residence, or bringing a ballot from a voter's hospital room to a mail collection area." ECF No. 44 ¶ 101.

## D

Plaintiffs challenge two provisions of Florida law. Those provisions, as amended by SB 90, are:

(1) Section 97.0575(3)(a), Florida Statutes (2021), which requires third-party voter registration organizations like HTFF to

    a.  notify the applicant at the time the application is collected that the organization might not deliver the application to the division or the supervisor of elections in the county in which the applicant resides in less than 14 days or before registration closes for the next ensuing election;

    b.  to advise the applicant that he or she may deliver the application in person or by mail; and

    c.  to inform the applicant how to register online with the division and how to determine whether the application has been delivered.

Plaintiffs allege that this provision violates their First Amendment speech and association rights and their Fourteenth Amendment due process rights. ECF No. 44 ¶¶ 111–50.

    (2) Section 104.0616(2), Florida Statutes (2021), which provides that any person who distributes, orders, requests, collects, delivers or otherwise physically possesses more than two vote-by-mail ballots per election in addition to their own ballot or a ballot belonging to an immediate family member commits a first-degree misdemeanor.

Plaintiffs allege that this provision violates their rights under section 208 of the Voting Rights Act, 52 U.S.C. § 1058. ECF No. 44 ¶¶ 151–59.

    Defendants Lee and Moody argue that at least some of Plaintiffs' claims

challenging these statutes fail as a matter of law.

## II

Defendants Lee and Moody move to dismiss Counts I and IV of Plaintiffs' amended complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). As it must, this Court first addresses threshold jurisdictional issues. A Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction "can be asserted on either facial or factual grounds." *Carmichael v. Kellogg, Brown & Root Servs., Inc.*, 572 F.3d 1271, 1279 (11th Cir. 2009) (citation omitted). A facial challenge occurs when, as here, defendants base their challenge to subject matter jurisdiction solely on the allegations in the complaint. *Id.* In considering the Defendants' facial challenge, this Court must take Plaintiffs' allegations as true. *Id.*

Defendant Lee argues that Plaintiffs lack standing to bring Count IV, which is their section 208 claim. ECF No. 79-1 at 39 n.25. Defendant Moody adopts and incorporates that argument and also argues that she is not a proper party as it relates to Count IV. ECF No. 130 at 1. Neither Defendant argues that Plaintiffs lack standing to bring Counts I–III, which challenge section 97.0575(3)(a) under the First and Fourteenth Amendments. Still, this Court has an independent responsibility to ensure Plaintiffs have standing to bring those claims. *E.g.*, *Summers v. Earth Island Inst.*, 555 U.S. 488, 499 (2009). So, this Court considers whether Plaintiffs have standing to challenge that provision as well.

To establish standing, Plaintiffs must show (1) that they have suffered an injury-in-fact that is (2) traceable to Defendants and that (3) can likely be redressed by a favorable ruling. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). And they must do so for each statutory provision they challenge. *CAMP Legal Def. Fund, Inc. v. City of Atlanta*, 451 F.3d 1257, 1273 (11th Cir. 2006) (emphasizing that courts have an "independent obligation . . . to ensure a case or controversy exists as to each challenged provision even in a case where the plaintiffs established harm under one provision of the statute"). Plaintiffs proceed under two theories of standing, organizational standing and associational standing. This Court discusses each in turn, starting with organizational standing.

An organization may have standing to assert claims based on injuries to itself if that organization is affected in a tangible way. *See Fla. Democratic Party v. Hood*, 342 F. Supp. 2d 1073, 1079 (N.D. Fla. 2004) ("An organization has standing to challenge conduct that impedes its ability to attract members, to raise revenues, or to fulfill its purposes." (citing *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982))). Here, Plaintiffs proceed under a diversion-of-resources theory. "Under the diversion-of-resources theory, an organization has standing to sue when a defendant's illegal acts impair the organization's ability to engage in its own projects by forcing the organization to divert resources in response." *Arcia v. Fla. Sec'y of State*, 772 F.3d 1335, 1341 (11th Cir. 2014).

11

In addition to organizational standing, an organization may have associational standing to sue "on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Greater Birmingham Ministries v. Sec'y of State of Ala.*, 992 F.3d 1299, 1316 (11th Cir. 2021) ("*GBM*"). As discussed below, Plaintiffs' members have standing as to the challenged provisions of SB 90. Additionally, this lawsuit is germane to Plaintiffs, whose core purposes involve registering voters, voter education, encouraging electoral participation, and advocating for accessibility for Florida voters. Finally, neither the claims asserted, nor the relief requested requires the participation of the individual members in this lawsuit. *See Nat'l Parks Conservation Ass'n v. Norton*, 324 F.3d 1229, 1244 (11th Cir. 2003); *GBM*, 992 F.3d at 1316 n.29 ("[P]rospective relief weigh[s] in favor of finding that associational standing exists.").

In addressing both forms of standing, this Court starts with the injury requirement as to each of the challenged provisions.

1. *Injury*

i.   Section 97.0575, Florida Statutes (2021)

Plaintiffs allege that this voter-registration-warning requirement "will require that HTFF divert time and resources to train its staff and volunteers" to give this warning, and away from "its other activities for SB 90-specific trainings and voter registration requirements." ECF No. 44 ¶ 32. In addition, Plaintiffs allege that this new requirement will "lengthen HTFF's interactions with each prospective registered voter (thereby making it harder to reach the same number of prospective voters in the same amount of time). . . ." *Id.*

Plus, Plaintiffs allege that this provision requires HTFF to provide potential voters "additional, unnecessary, and vague information," and "compels them to engage in false speech, undermines the credibility they have established in the communities in which they work, and fails to provide them with proper notice as to the penalties for any alleged violations of the law." *Id.* ¶ 31. Plaintiffs allege that the "compelled declaration is at worst false and, at best, misleading." *Id.* ¶ 130. Moreover, they allege that it requires HTFF "to undermine their own work, message, and mission by requiring them to state that they 'might not' turn in the application on time, especially when [HTFF] ha[s] every intention to submit the forms on time." *Id.* Based on their allegations, this Court can reasonably infer that HTFF disagrees

13

with the message of the new disclaimer requirement and would otherwise not convey that message absent the new law which requires it.

Both HTFF's alleged diversion of resources and compelled speech are cognizable injuries-in-fact that satisfy the first prong of this Court's standing analysis.[3] *See, e.g.*, *Arcia*, 772 F.3d at 1341; *Janus v. Am. Fed. of State, Cnty., & Mun. Emps., Council 31*, 138 S. Ct. 2448, 2464 (2018) ("Whenever the Federal Government or a State prevents individuals from saying what they think on important matters or compels them to voice ideas with which they disagree, it undermines [the] ends [that free speech serves]."). Indeed, no Defendant has argued that HTFF has not properly alleged an injury-in-fact with respect to this statute. Accordingly, I conclude that HTFF is suffering an injury-in-fact with respect to section 97.0575, as amended by SB 90.[4]

---

[3] No other Plaintiffs allege that they are injured by this provision. Accordingly, to the extent that Plaintiffs' amended complaint can be read to allege claims by the PVAF plaintiffs or Mr. Kirk challenging section 97.0575, those claims are due to be dismissed for lack of standing.

[4] "The party invoking federal jurisdiction bears the burden of proving standing." *Bischoff v. Osceola Cnty., Fla.*, 222 F.3d 874, 878 (11th Cir. 2000). Critically, "each element of standing 'must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation.' " *Id.* (quoting *Lujan*, 504 U.S. at 561). "Therefore, when standing becomes an issue on a motion to dismiss, general factual allegations of injury resulting from the defendant's conduct may be sufficient to show standing." *Id.* "However, when standing is raised at the summary judgment stage, the plaintiff must 'set forth by affidavit or other evidence specific facts, which for purposes of the summary judgment motion will be taken as true.' " *Id.* (quoting *Lujan*, 504 U.S. 561). This Court reiterates this well-worn standard to make plain that Plaintiffs must present evidence moving forward. Moreover, Plaintiffs must be mindful that generalized testimony about a diversion of resources may not be enough at the summary judgment stage or later to prove that the organizational plaintiffs have been injured due to a diversion-of-resources theory. *See, e.g.*,

ii.     Section 104.0616(2), Florida Statutes (2021)

Plaintiffs allege that federal law entitles Mr. Kirk and the PVAF Plaintiffs' members who require assistance "by reason of blindness, disability, or inability to read or write" to receive help in voting from a "person of the voter's choice, other than the voter's employer or agent of that employer or officer or agent of the voter's union." ECF No. 44 ¶ 109 (quoting 52 U.S.C. § 10508). But under section 104.0616, as amended by SB 90, Plaintiffs allege that Florida law limits voters who are blind, disabled, or unable to read or write from receiving assistance in returning a mail ballot from only an "immediate family member," as defined by statute, or another person who has assisted only one other voter who is not an immediate family member. *Id.* ¶ 102.

According to the PVAF Plaintiffs, this has real-world consequences for VA clients who rely on social workers to return their ballots for them. Plaintiffs contend that this statute will limit the four social workers in VA facilities serving clients with spinal cord injuries to assisting a maximum of eight total clients who need help returning their vote-by-mail ballots. *Id.* ¶ 50. Similarly, the four social workers who work for VA facilities spread across over 40 Florida counties will likewise be limited

---

*Jacobson v. Fla. Sec'y of State*, 974 F.3d 1236, 1250 (11th Cir. 2020) ("Although resource diversion is a concrete injury, neither Kazin nor Cecil explained what activities the Committee or Priorities USA would divert resources away from in order to spend additional resources on combatting the primacy effect, as precedent requires." (emphasis in original)). Here, although Plaintiffs' detailed factual allegations may survive a motion to dismiss, Plaintiffs must substitute their allegations with sufficient, detailed, and relevant evidence at summary judgment and later.

to assisting only eight total clients who need help returning their vote-by-mail ballots. *Id*. In addition, Mr. Kirk wishes to have his hired caregiver assist him in marking and submitting his vote-by-mail ballot, but if she assists more than one other person who is not an immediate family member, she will be unable to help him without committing a crime under this challenged provision. *Id*. ¶ 156.

For these reasons, Plaintiffs allege that members of the two PVAF chapters and Mr. Kirk will be deprived of their right to assistance from their person of choice under the Voting Rights Act. This Court is satisfied that Plaintiffs have alleged an injury-in-fact for standing purposes; however, Plaintiffs have not alleged that these injuries are traceable to Defendants, as discussed in more detail below, and their claim under Count IV is due to be dismissed.

## 2. *Causation*

As described above, this Court is satisfied that Plaintiffs have alleged an injury-in-fact as to sections 97.0575(3)(a) and 104.0616(2). But an injury-in-fact is not enough, Plaintiffs must also show causation and redressability. *Lujan*, 504 U.S. at 560. This Court first turns to causation.

Plaintiffs must establish causation by showing that "their injuries are connected with" Defendants' conduct. *Wilding v. DNC Servs. Corp.*, 941 F.3d 1116, 1125 (11th Cir. 2019) (cleaned up) (quoting *Trump v. Hawaii*, 138 S. Ct. 2392, 2416 (2018)). In other words, Plaintiffs must show that their injury is "fairly traceable to

the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Lujan*, 504 U.S. at 560.

To do so, Plaintiffs need only show "that there is a substantial likelihood of causation." *Duke Power Co. v. Env't Study Grp.*, 438 U.S. 59, 75 n.20 (1978). This is not an exacting standard; "[p]roximate causation is not a requirement of Article III standing." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 134 (2014). And thus "[a] plaintiff . . . need not show (or, as here, allege) that 'the defendant's actions are the very last step in the chain of causation.' " *Wilding*, 941 F.3d at 1126 (quoting *Bennett v. Spear*, 520 U.S. 154, 168–69 (1997)). "[E]ven harms that flow indirectly from the action in question can be said to be 'fairly traceable' to that action for standing purposes." *Focus on the Fam. v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1273 (11th Cir. 2003).

HTFF's constitutional claims (Counts I–III) are each brought against Defendant Lee and Defendant Moody and challenge only section 97.0575(3)(a), as amended. Count IV, alleging that section 104.0616(2) conflicts with federal law and violates the Voting Rights Act, is brought against Defendant Lee, Defendant Moody, and the Defendant Supervisors of Elections.[5] This Court will address causation as to each Defendant and each statutory provision, in turn, beginning with whether

---

[5] The Supervisors of Elections have not moved to dismiss. However, this Court has an independent responsibility to determine whether it has jurisdiction to hear Plaintiffs' claims, which includes whether Plaintiffs have standing to challenge each of the provisions at issue in this case.

Plaintiffs' alleged injuries flowing from section 97.0575(3)(a) are traceable to Defendants Lee and Moody.

Defendants Lee and Moody both play a direct role in enforcing the new voter registration warning requirement under section 97.0575(3)(a). Specifically, section 97.0575(4) states that "[i]f the Secretary of State reasonably believes that a person has committed a violation of this section, the secretary may refer the matter to the Attorney General for enforcement." Further, "[t]he Attorney General may institute a civil action for a violation of this section or to prevent a violation of this section." *Id*. Such action for relief "may include a permanent or temporary injunction, a restraining order, or any other appropriate order." *Id*.

Accordingly, Plaintiff HTFF's constitutional injuries, flowing from being forced to convey a message it would not otherwise convey, are directly traceable to Defendant Lee's and Defendant Moody's authority to commence civil enforcement proceedings against it in the event it violates the new requirements. Defendant Moody acknowledges as much in her motion to dismiss. *See* ECF No. 130 at 3 n.1 ("The Attorney General recognizes that she has <u>civil</u> enforcement authority over §97.0575(3), Fla. Stat. (2021), which contains the challenged third-party registration organization requirements.") (emphasis in original). Defendant Lee similarly agrees that HTFF's injuries from section 97.0575 are traceable to her enforcement

authority. *See* ECF No. 65 at 8–10. I conclude Plaintiff HTFF's constitutional injuries are therefore traceable to these two Defendants.

Next, unlike the voter-registration provision discussed above, Plaintiffs have not alleged, nor has this Court identified, any statutory provision that connects the Defendant Supervisors or Defendant Lee to Plaintiffs' alleged injuries under section 104.0616(2). This provision makes it a crime, punishable as a first-degree misdemeanor, to distribute, order, request, collect, deliver, or otherwise physically possess more than two vote-by-mail ballots other than one's own or an immediate family member's ballot.

Moreover, this Court has not identified any statute that requires Defendant Supervisors or Defendant Lee to record or confirm the identities of volunteers who assist voters in returning vote-by-mail ballots or to report any suspected violation of section 104.0616(2) to the appropriate authorities. Nor have Plaintiffs alleged any facts from which this Court could reasonably infer that Defendant Lee or Defendant Supervisors have collected or will collect or confirm such information to aid in the prosecution of individuals suspected of violating section 104.0616(2). In short, Plaintiffs have not identified any authority or alleged any facts from which this Court could reasonably infer that Defendant Lee or Defendant Supervisors have any enforcement authority under this criminal statute. I therefore conclude that

19

Plaintiffs' alleged injuries with respect to section 104.0616(2) are not traceable to the Defendant Supervisors or Defendant Lee.

This leaves Defendant Moody. As Defendant Moody points out, in most cases, Florida's State Attorneys are responsible for enforcing criminal statutes like section 104.0616(2) through their authority to prosecute crimes. ECF No. 130 at 8. And absent a showing that Defendant Moody is part of the causal chain resulting in Plaintiffs' alleged injuries, Plaintiffs have not satisfied the causation element of standing. This Court agrees that State Attorneys are arguably proper defendants when challenging a criminal statute like section 104.0616(2). However, Plaintiffs have not sued any State Attorneys.

Alternatively, Plaintiffs assert that their injuries are traceable to Defendant Moody through the enforcement authority of the Office of Statewide Prosecution, which has the power to investigate and enforce violations of the challenged criminal statute if it occurs in two or more judicial circuits. ECF No. 147 at 6; *see also* § 16.56(1)(a)13., Fla. Stat. (authorizing office to investigate and prosecute any crime involving voter registration, voting, or candidate or issue petition activities). Plaintiffs allege that two groups of VA facilities covering a large swath of the state of Florida employ a total of eight social workers who may assist disabled voters in marking and returning their vote-by-mail ballots. However, Plaintiffs allege no facts from which this Court may infer that those social workers have or intend to assist

more than two clients in two or more judicial circuits, and thus would become subject to investigation or prosecution by the Statewide Prosecutor. Nor do Plaintiffs allege that Mr. Kirk's caregiver intends to assist more than two voters in more than one judicial circuit. This Court recognizes that this is an exceedingly close call given Plaintiffs' allegations that only eight social workers are employed to cover most of the state of Florida. But Plaintiffs' allegations leave too many blanks for this Court to fill with stacked inferences to conclude that the activities of eight VA social workers and Mr. Kirk's caregiver are subject to enforcement from the Statewide Prosecutor. This leaves any future decision by this Court in jeopardy of reversal for lack of standing, because "Article III standing must be determined as of the time at which the plaintiff's complaint is filed." *Focus on the Family*, 344 F.3d at 1275 (listing cases). Accordingly, Plaintiffs' allegations, as pled, do not allow this Court to conclude that their injuries under section 104.0616 are traceable to Defendant Moody. *Cf. Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 832 (1989) (citing 28 U.S.C. § 1653) (explaining that parties may "remedy inadequate jurisdictional allegations, but not defective jurisdictional facts").

To reiterate, I conclude that Plaintiffs' alleged injuries related to section 97.0575(3)(a)'s registration warning requirement, as pled, are traceable to both Defendant Lee and Moody. I also conclude that Plaintiffs' alleged injuries related to section 104.0616's criminalization of assisting more than two voters with voting by

mail, as pled, are not traceable to any Defendants. Accordingly, Count IV is **DISMISSED for lack of standing**.

Having concluded that Plaintiffs' injuries as to the registration warning requirement are traceable to Defendants Lee and Moody, this Court turns to the third element of standing, redressability.

### 3. *Redressability*

The redressability prong "focuses . . . on whether the injury that a plaintiff alleges is likely to be redressed through the litigation." *Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.*, 554 U.S. 269, 287 (2008) (emphasis removed). A "substantial likelihood" of redressability will satisfy this prong. *Duke Power*, 438 U.S. at 79.

Here, enjoining Defendant Lee and Defendant Moody from using their powers to investigate and prosecute civil enforcement proceedings for suspected violations of section 97.0575(3)(a) will go a long way towards redressing HTFF's injuries. To understand why, one need only ask what practical effect such an order would have. *See Utah v. Evans*, 536 U.S. 452, 464 (2002) (finding redressability where a favorable ruling's "practical consequence" was to make it more likely "that the plaintiff would obtain relief that directly redresses the injury suffered"). Enjoining Defendant Lee and Defendant Moody from enforcing section 97.0575(3)(a) would have the practical effect of removing the threat of punishment for HTFF, including potential financial penalties, restraining orders, and injunctions against it, in the

event their members or volunteers violate the new warning requirement. Defendants Lee and Moody do not dispute this.

Accordingly, as to Counts I–III, I conclude that HTFF has standing to pursue its claims challenging section 97.0575(3)(a) against Defendant Lee and Defendant Moody. Having so concluded, this Court turns to the balance of Defendants' remaining arguments with respect to the claims that survive this Court's standing inquiry.

III

The only remaining claim in dispute is Count I.[6] Plaintiffs allege that sections 97.0575(3)(a)(1)–(3) are unconstitutionally vague because, though "they establish fine amounts for untimely returning completed forms," they "are wholly silent on any specific penalties for violating the new disclaimer and disclosure requirement." ECF No. 44 ¶ 116. Defendant Lee argues in summary fashion that Plaintiff HTFF has failed to state a vagueness claim because "[t]here is nothing vague about the consequences to third-party voter registration organizations for non-compliance; . .

---

[6] As the parties well know, in evaluating Defendants' motions, this Court accepts the allegations in the amended complaint as true and construes them in the light most favorable to Plaintiffs. *See Hunt v. Amico Props., L.P.*, 814 F.3d 1213, 1221 (11th Cir. 2016). "To withstand a motion to dismiss under Rule 12(b)(6), a complaint must include 'enough facts to state a claim to relief that is plausible on its face.' " *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A 'claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' " *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Plaintiff's allegations must amount to 'more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.' " *Id.* (quoting *Twombly*, 550 U.S. at 555).

. the aggregate maximum annual penalty explicitly established by statute for noncompliance is $1,000." ECF No. 79-1 at 36 (citing § 7, Chapter 2021-11, Laws of Florida). Defendant Moody incorporates this abbreviated argument by reference into her own motion to dismiss. ECF No. 130 at 1.

In opposition, HTFF asserts the financial penalties specified by statute only apply when third-party voter registration organizations do not comply with time limits for delivering registration applications. ECF No. 119 at 6. On top of this, Defendant Lee's earlier assertion regarding this statutory scheme's clarity is belied by her "notice concerning interpretation of section 97.0575 of the Florida Statutes," that she inexplicably filed in a separate case, but not this case. *See* ECF No. 235, Case No. 4:21cv186-MW/MAF. In her notice, Defendant Lee changes positions without explanation, asserting "a more appropriate interpretation [of the statute] is that the $1,000 maximum penalty applies only to those who fail to timely deliver voter registration applications; it does not apply to those who fail to provide the required voter-registration notice." *Id.* at 2. Notwithstanding this reinterpretation, and without further explanation, Defendant Lee states that "the requirements imposed through section 97.0575(3)(a) are clear as are the penalties imposed through section 97.0575(4)." *Id.* Once again, Defendant Moody joins in these arguments. *Id.* at 2 n.1.

24

To state a vagueness claim, "it is enough at the pleading stage for the plaintiff to allege sufficient factual material to allow the Court to reasonably infer that the contested law is unconstitutionally vague." *Fla. Action Comm., Inc. v. Seminole Cnty.*, 212 F. Supp. 3d 1213, 1224 (M.D. Fla. 2016) (citing *Iqbal*, 556 U.S. at 678). "In short, a vagueness claim lies where those who enforce the law or those who are subject to its enforcement 'must necessarily guess at its meaning and differ as to its application.' " *Id*. (quoting *Connally v. Gen. Constr. Co.*, 269 U.S. 385, 391 (1926)).

The crux of HTFF's vagueness claim is that section 97.0575 does not make clear whether and to what extent third-party voter registration organizations are subject to financial penalties for failing to give the required disclaimer under section 97.0575(3)(a), nor does it specify "what civil penalties the Attorney General may pursue or the range or maximum amount of such penalties," under section 97.0575(4). ECF No. 44 ¶ 118.

Having reviewed the factual allegations in the amended complaint, the challenged provisions at issue, and the parties' arguments—including Defendant Lee's shifting interpretations of 97.0575(3)(a), as adopted by Defendant Moody, *see* ECF No. 158 at 2—this Court finds that HTFF has adequately alleged a vagueness claim that allows this Court to reasonably infer that section 97.0575(3)(a) is vague in the way HTFF contends. Specifically, that the amended statute "neither informs community voter registration organizations . . . of the potential penalties that

accompany noncompliance with the disclaimer/disclosure provisions nor provides explicit standards for Defendants to enforce it." ECF No. 119 at 6. Accordingly, to the extent Defendant Lee and Defendant Moody assert Count I is due to be dismissed for failure to state a claim, their motions are **DENIED**.

For the foregoing reasons,

**IT IS ORDERED**:

1. Defendant Lee's and Defendant Moody's motions to dismiss, ECF Nos. 79 and 130, are **GRANTED in part** and **DENIED in part**.

2. Count IV is **DISMISSED for lack of standing**.

3. The balance of Defendants' motions to dismiss are **DENIED**.

4. If any party files a substantive "omnibus" memorandum or "omnibus" order again, that party's motion will be denied without prejudice for failure to follow this Court's orders.

**SO ORDERED on October 8, 2021.**

<u>**s/Mark E. Walker**</u>
**Chief United States District Judge**