IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

**HARRIET TUBMAN FREEDOM FIGHTERS CORP.**, et al.,

    *Plaintiffs*,

v.                                                                              Case No.:  4:21cv242-MW/MAF

**LAUREL M. LEE, in her official capacity as Florida Secretary of State**, et al.,

    *Defendants*,

**and**

**NATIONAL REPUBLICAN SENATORIAL COMMITTEE and REPUBLICAN NATIONAL COMMITTEE**,

    *Intervenor-Defendants*.

_____/

## ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

This is a voting case. This Court has considered, without hearing, the parties' cross-motions for summary judgment and evidence attached in support thereof. Plaintiff has challenged several new laws enacted or amended by the Florida Legislature in SB 90. Defendant Lee, joined in full by Defendant Moody and joined in part by Intervenor-Defendants, has moved for summary judgment, asserting that Plaintiff lacks standing to challenge these laws, and in the alternative, that no dispute

of material fact exists as to each claim and that Defendants are legally entitled to judgment. ECF Nos. 215 and 217. Plaintiff has moved for partial summary judgment as to certain claims. ECF No. 216. This Order addresses each issue, starting with whether Plaintiff has demonstrated standing at the summary-judgment stage.[1]

I

To establish standing, Plaintiff must show (1) that it has suffered an injury-in-fact that is (2) traceable to Defendant and that (3) can likely be redressed by a favorable ruling. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). And it must do so for each statutory provision it challenges. *CAMP Legal Def. Fund, Inc. v. City of Atlanta*, 451 F.3d 1257, 1273 (11th Cir. 2006) (emphasizing that courts have an "independent obligation . . . to ensure a case or controversy exists as to each challenged provision even in a case where the plaintiffs established harm under one provision of the statute").

An organization may have standing to assert claims based on injuries to itself if that organization is affected in a tangible way. *See Fla. Democratic Party v. Hood*, 342 F. Supp. 2d 1073, 1079 (N.D. Fla. 2004) ("An organization has standing to challenge conduct that impedes its ability to attract members, to raise revenues, or to fulfill its purposes." (citing *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379

---

[1] The parties are well aware of this case's underlying facts and procedural history, and thus this Court will not restate them here.

2

(1982))). Here, Plaintiff proceeds under a diversion-of-resources theory. "Under the diversion-of-resources theory, an organization has standing to sue when a defendant's illegal acts impair the organization's ability to engage in its own projects by forcing the organization to divert resources in response." *Arcia v. Fla. Sec'y of State*, 772 F.3d 1335, 1341 (11th Cir. 2014).

"The party invoking federal jurisdiction bears the burden of proving standing." *Bischoff v. Osceola Cnty., Fla.*, 222 F.3d 874, 878 (11th Cir. 2000). Critically, "each element of standing 'must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation.' " *Id.* (quoting *Lujan*, 504 U.S. at 561). Accordingly, "when standing is raised at the summary judgment stage, the plaintiff must 'set forth by affidavit or other evidence specific facts, which for purposes of the summary judgment motion will be taken as true.' " *Id.* (quoting *Lujan*, 504 U.S. 561).

In this case, Defendant Lee asserts that Plaintiff was not an approved third-party voter registration organization ("3PVRO") until *after* the enactment of the challenged registration-warning provision and thus, it is "inconceivable" that Plaintiff has had to divert resources away from other programs to address this requirement. ECF No. 215-1 at 9. In short, Defendant Lee claims, without citation to authority, that "the diversion theory cannot work when there exists no baseline to

3

measure diversion against—there is no pre-2021 Law state for [Plaintiff] to compare with its post-2021 Law operations." *Id*. at 10.² Not so.

This Court recognized Plaintiff's cognizable injury under a diversion-of-resources theory at the pleading stage, ECF No. 190 at 12–13, and now Plaintiff has put meat on the bones to show its limited resources—that would otherwise be used to generate educational materials, hire more canvassers, and build community capacity—are diverted to pay staff to train on the registration-warning requirement and generate printed forms to comply with the challenged law. *See, e.g.*, ECF No. 232 at 9 n.13–14; *see also* ECF No. 227-2 at 14–15 (Plaintiff's 30(b)(6) deposition excerpts) and ECF No. 227-6 (voter registration acknowledgment form). Plaintiff's evidence demonstrates that, because of the challenged law, it has had to "divert personnel and time from other activities to educating volunteers and voters on compliance with the requirement." *Jacobson v. Fla. Sec'y of State*, 974 F.3d 1236, 1250 (11th Cir. 2020) (internal quotation marks omitted) (quoting *Fla. State Conf. of NAACP v. Browning*, 522 F.3d 1153, 1166 (11th Cir. 2008)). Plaintiff has established its injury-in-fact based on a diversion of resources at the summary-judgment stage.

---

² Defendant Lee cites no authority for her new position that, to establish an Article III injury under a diversion-of-resources theory, Plaintiff must show some pre-enactment baseline from which the organization can measure its diversion of resources. Defendant Lee's position is unsupported by the law and would yield an absurd result in foreclosing this theory of standing for any organizations not in existence prior to the passage of an allegedly unconstitutional law.

4

Defendant Lee also suggests that Plaintiff's failure to account for the number of voters who have been dissuaded from registering because of the warning requirement shows that Plaintiff cannot prove that the warning requirement undermines its credibility in the communities where it works. ECF No. 215-1 at 9. But this in no way undermines Plaintiff's First Amendment injury in being compelled to communicate a message that it disagrees with and would not otherwise convey. *See* ECF No. 232 at 6; *see also* ECF No. 227-2 at 25–26.

Lastly, Defendant Lee does not raise any infirmities with respect to traceability or redressability; moreover, upon review of the evidence in the record, nothing has changed that would affect this Court's conclusions as to both standing requirements from the pleading stage. *See* ECF No. 190 at 16–23. Accordingly, the facts and all reasonable inferences drawn therefrom demonstrate that Plaintiff has standing to proceed at the summary-judgment stage.[3]

II

The parties already know the standard that this Court applies in addressing a summary-judgment motion. On cross-motions, that standard remains the same. This

---

[3] Standing jurisprudence in the Eleventh Circuit is evolving. This Court reiterates that Plaintiff must establish standing at each stage of the case, including trial. The facts and all reasonable inferences in favor of Plaintiff at this stage demonstrate that Plaintiff has standing, but more granular facts may be required at trial to establish the same. *See Jacobson*, 974 F.3d at 1250. Plaintiff's counsel should be prepared to introduce evidence with specificity as to the diversion of resources necessitated by the challenged laws and the identifiable burdens the challenged provisions impose upon its members, if any.

Court evaluates the cross-motions separately, viewing the evidence in the light most favorable to the non-movant.

This case concerns SB 90's registration-warning provision. And Plaintiff attacks that provision from two angles. First, Plaintiff alleges that the provision is unconstitutionally vague because it does not specify the penalties for those who fail to comply. Second, Plaintiff alleges that the provision violates the First Amendment by compelling speech. This Court considers each claim in turn.

A

This Court starts with Plaintiff's vagueness claim. A law can be vague in two distinct ways. "First, if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits. Second, if it authorizes or even encourages arbitrary and discriminatory enforcement." *Wollschlaeger v. Governor, Fla.*, 848 F.3d 1293, 1319 (11th Cir. 2017) (en banc) (quoting *Hill v. Colorado*, 530 U.S. 703, 732 (2000)). In this case, Plaintiff invokes the second concern. *See* ECF No. 44 ¶ 120 ("These ambiguities risk allowing the Attorney General to enforce the statute on an *ad hoc* and subjective basis." (quotation omitted)).

More specifically, Plaintiff targets subsections (3)(a) and (4) of section 97.0575, Florida Statutes. Relevant to Plaintiff's claim, subsection (3)(a) requires "third-party voter registration organizations" to warn registrants that "the organization might not [timely] deliver the application to the division or the

6

supervisor of elections" and also requires such organizations to "advise" registrants about other methods of registering. Subsection (4), in turn, empowers the Secretary of State to refer "violation[s] of this section . . . to the Attorney General for enforcement." And once the Secretary refers a matter, [t]he Attorney General may institute a civil action" seeking "a permanent or temporary injunction, a restraining order, or any other appropriate order."

Plaintiff claims that subsections (3)(a) and (4) together are vague because they do not make clear what the penalties are for failing to deliver the required disclaimer, nor do they clarify whether unintentionally omitting the disclaimer invites penalties. ECF No. 216 at 28.[4]

In response, Defendants argue that "[t]here is nothing vague about the consequences to [Plaintiff] for non-compliance with the notification provision." ECF No. 215-1 at 10. According to Defendants, Plaintiff "may be subject to a civil action brought to prevent . . . violation[s] by means of a permanent or temporary injunction, restraining order, or other appropriate order—all well within the province and expertise of the courts." *Id.* at 11. Beyond that, Defendants cite only to this Court's decision in *League of Women Voters of Florida v. Browning*, in which this Court

---

[4] While certainly relevant, *see Jones v. Governor of Fla.*, 975 F.3d 1016, 1047 (11th Cir. 2020) (en banc), the presence or absence of a scienter requirement is not, as the parties both suggest, the be-all end-all factor in a vagueness analysis. *See* ECF No. 216 at 31; ECF No. 321-1 at 39 n.11, *in* Case No. 4:21cv186.

upheld an earlier version of section 97.0575(4) in the face of a vagueness challenge, finding it "unobjectionable." 863 F. Supp. 2d 1155, 1166–1167 (N.D. Fla. 2012).

Because the issue before this Court was squarely presented in *Browning*, this Court begins its analysis there. *See* Plaintiffs' Memorandum in Support of Motion for Preliminary Injunction at 41, *League of Women Voters of Fla. v. Browning*, (4:11cv628) 863 F. Supp. 2d 1155 (N.D. Fla. 2012), ECF No. 9-1 (arguing that section 97.0575(4) "suffers from fatal vagueness infirmities because it delegates undefined and seemingly limitless powers to the Attorney General"). Indeed, as to subsection (4), the statute addressed in *Browning* was identical to the statute at issue here. *Compare* § 97.0575(4), Fla. Stat. (2011) *with* § 97.0575(4), Fla. Stat. (2021).

Nonetheless, Plaintiff argues that *Browning* is not persuasive. For one, Plaintiff says, the registration-warning requirement was not present in the statute addressed in *Browning*. And "even so," Plaintiff says, it has presented evidence in *this case* that Defendant Lee has "inconsistently fined groups for untimely submitting forms under paragraph (3)(a)"—thus demonstrating the risk of selective or arbitrary enforcement under the statute. ECF No. 232 at 13. Based on this evidence, Plaintiff argues, this Court should reconsider its previous conclusion.

On the first point, Plaintiff does not explain why the addition of the registration-warning requirement changes the equation. Perhaps it implicates the unique interplay between vagueness and rights guaranteed by the First Amendment.

8

*See NAACP v. Button*, 371 U.S. 415, 432 (1963) ("[S]tandards of permissible statutory vagueness are strict in the area of free expression."). But that cannot be. The First Amendment was also implicated in *Browning*. 863 F. Supp. 2d at 1158–59. Accordingly, this Court does not find Plaintiff's first point persuasive.

Plaintiff's second point, however, is stronger. Prior to *Browning*, section 97.0575 did not contain the provision at issue here. *Compare* § 97.0575(4)(b), Fla. Stat. (2008) (stating that the "division [of elections] may investigate any violation of this section" and that "[c]ivil fines shall be assessed by the division and enforced through any appropriate legal proceedings") *with* § 97.0575(4), Fla. Stat. (2011) (authorizing the Attorney General to seek "a permanent or temporary injunction, a restraining order, or any other appropriate order"). So, in *Browning*, this Court did not have before it the alleged history of arbitrary enforcement that this Court has before it now. *Compare* ECF No. 221-1 at 2 (fining partisan group for submitting four late forms) *with* ECF No. 221-8 at 5 (evidence suggesting that third-party registration organization submitted 67 late applications but suffered no fine). *See also* ECF No. 221-4 at 2 (apparently taking no action against the same third-party organization despite describing it as responsible for "serial violations").

At the very least, this evidence raises the possibility that Defendant Lee and her predecessors have applied section 97.0575 in an inconsistent way, and thus also raises the possibility that she could apply it in a discriminatory way. Whether that

possibility is reality, however, is a question of fact. And although that fact may or may not be material, even in the "absence of a genuine issue as to a material fact," the need for a more detailed "factual basis" on which to decide a complicated legal issue may "warrant[] denial of [a] summary judgment motion." *Bingham, Ltd. v. United States*, 724 F.2d 921, 926 (11th Cir. 1984). Here this Court finds that it would be better to reserve judgment on this issue until it has a complete factual record before it at trial.[5] The cross-motions for summary judgment are therefore **DENIED** as to Count I of Plaintiff's amended complaint.

B

Next, this Court turns to Plaintiff's compelled-speech claim. In moving for summary judgment on this claim, Defendants make two arguments. First, they argue that the registration requirement is subject to—and easily passes—minimal scrutiny.[6] Second, they argue that, even if this Court subjects the warning requirement to more heightened scrutiny, the requirement advances a compelling state interest. Plaintiff, by contrast, argues that the registration-warning provision compels speech, and is thus subject to strict scrutiny—which it fails.

---

[5] This Court need not decide now whether the alleged fact that Defendant Lee has arbitrarily applied the challenged provision, if true, would change its analysis, and the parties should be prepared to argue the issue at trial.

[6] Elsewhere, Defendants argue that the registration-warning provision "does not infringe on any speech." *See* ECF No. 321-1 at 43, *in* Case No. 4:21cv186. Here, however, Defendants seem to acknowledge that the provision *does* infringe on speech to some degree but contend that any infringement is constitutional.

The threshold issue, then, is what framework applies. Defendants first argue that strict scrutiny cannot apply because "[t]he notification provision and Plaintiffs' activities are *complementary*." ECF No. 215-1 at 14 (emphasis in original). Defendants, however, cite no authority in support of the proposition that compelled speech is acceptable so long as a court decides that the government's message complements the speaker's message—likely because there is none.[7]

As the Supreme Court has explained, government-required notices *are* content-based restrictions; "[b]y compelling individuals to speak a particular message, such notices 'alte[r] the content of [their] speech.' " *Nat'l Inst. of Fam. & Life Advocs. v. Becerra*, 138 S. Ct. 2361, 2371 (2018) ("*NIFLA*") (alteration in original) (quoting *Riley v. Nat'l Fed'n of Blind of N.C., Inc.*, 487 U.S. 781, 795 (1988)). Still, because "the general rule that content-based restrictions trigger strict scrutiny is not absolute," this conclusion does not automatically mean strict scrutiny applies. *Dana's R.R. Supply v. Att'y Gen., Fla.*, 807 F.3d 1235, 1246 (11th Cir. 2015).

Recognizing that exceptions exist, Defendants assert that the deferential standard of review from either *Zauderer v. Office of Disciplinary Counsel of*

---

[7] Defendants' position is akin to arguing that no constitutional issue would arise if the state required University of Florida tour guides to sing FSU's praises because it's complementary to the school's proclaimed pursuit of excellence. Moreover, according to Plaintiffs, Defendants' assertion that the compelled warning complements their speech is simply not true. Even if it were appropriate for this Court to recast Plaintiffs' message in addressing their compelled speech claim—and, again, it isn't—this dispute raises an issue of fact that this Court cannot resolve at this stage.

11

*Supreme Court of Ohio*, 471 U.S. 626 (1985) or *Central Hudson Gas & Electric Corp. v. Public Service Commission of New York*, 447 U.S. 557 (1980) applies to Plaintiff's claims. These cases apply, Defendants say, because Plaintiff's "communications with voters are conceptually closer to commercial speech than to protected political expression."[8] ECF No. 215-1 at 15. Beyond this *ipse dixit*, Defendants do not explain why Plaintiff's speech resembles commercial speech. That is because it doesn't; both *Zauderer* and *Central Hudson* are plainly inapplicable here.

*Zauderer*, by its own terms, applies only to commercial speech by professionals. 471 U.S. at 629 ("This case presents additional unresolved questions regarding the regulation of commercial speech by attorneys."). *See also NIFLA*, 138 S. Ct. at 2372 ("[O]ur precedents have applied more deferential review to some laws that require professionals to disclose factual, noncontroversial information in their 'commercial speech.' " (quoting *Zauderer*, 471 U.S. at 651)). *Central Hudson*, likewise, governs commercial speech. 447 U.S. at 564–66 (setting out "a four-part analysis" to govern "commercial speech cases").

---

[8] Both *Zauderer* and *Central Hudson* are plainly limited to commercial speech. While Defendants dance around this conclusion in several related cases, *see, e.g.*, ECF No. 321-1 at 44, *in* Case No. 4:21cv186 (arguing that *Zauderer* "applies to non-controversial factual statements like the ones required here"), in this case, Defendants attack the issue head-on by attempting to liken Plaintiff's speech to commercial speech.

Plaintiff's speech is not commercial. Commercial speech is "expression related solely to the economic interests of the speaker and its audience." *Central Hudson*, 447 U.S. at 561. *See also Dana's*, 807 F.3d at 1246 (defining commercial speech as "a narrow category of necessarily expressive communication that is related solely to the economic interests of the speaker and its audience . . . or that does no more than propose a commercial transaction." (quotations omitted)); *Commercial*, BLACK'S LAW DICTIONARY (6th ed. 1990) ("Relates to or is connected with trade and traffic or commerce in general; is occupied with business and commerce.").

Here, there is absolutely no allegation—not a hint—that Plaintiff charges voters a fee to return their applications or that Plaintiff is somehow in the business of returning voter registration applications. And, at any rate, other courts have already rejected Defendants' argument, explaining that "voter-registration information does not propose any kind of commercial transaction." *Minn. Voters All. v. City of Saint Paul*, 442 F. Supp. 3d 1109, 1117 (D. Minn. 2020); *See also League of Women Voters v. Hargett*, 400 F. Supp. 3d 706, 730 n.10 (M.D. Tenn. 2019) (same). In short, neither *Zauderer* nor *Central Hudson* apply.

That said, the issue of what level of scrutiny applies is not a binary question, as the parties' briefing suggests. To be sure, ordinarily, when one of the above exceptions does not apply, a content-based regulation is "presumptively unconstitutional and may be justified only if the government proves that [it is]

13

narrowly tailored to serve compelling state interests." *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 163 (2015). Here, however, there is yet another layer to the analysis.

The *Anderson–Burdick* test is typically used to evaluate First Amendment challenges to election laws. *See Anderson*, 460 U.S. at 786–89. But when an election law does "not control the mechanics of the electoral process" and is instead "a regulation of pure speech," an "exacting scrutiny" test applies. *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 345 (1995) (quoting *Meyer v. Grant*, 486 U.S. 414, 420 (1988)). *See also Ams. for Prosperity Found. v. Bonta*, 141 S. Ct. 2373, 2383 (2021) ("[C]ompelled disclosure requirements are reviewed under exacting scrutiny.").

Under exacting scrutiny, this Court must "uphold the restriction only if it is narrowly tailored to serve an overriding state interest." *Id.* at 347. "Though possibly less rigorous than strict scrutiny, exacting scrutiny is more than a rubber stamp." *Worley v. Fla. Sec'y of State*, 717 F.3d 1238, 1249 (11th Cir. 2013) (quoting *Minn. Citizens Concerned for Life, Inc. v. Swanson*, 692 F.3d 864, 876 (8th Cir. 2012)).

Whether strict or exacting scrutiny applies here is far from clear. *Compare Minnesota Voters*, 442 F. Supp. 3d at 1118 (applying strict scrutiny) *with Hargett*, 400 F. Supp. 3d at 725 (applying exacting scrutiny). And even under *Anderson–Burdick*, strict scrutiny might apply. *See Citizens for Legis. Choice v. Miller*, 144

F.3d 916, 921 (6th Cir. 1998) (explaining that "a law severely burdens voting rights if it discriminates based on content instead of neutral factors").

This Court need not decide now what standard applies—nor would it be prudent to do so in the absence of briefing by the parties.[9] Defendants are not entitled to summary judgment under any standard. And, though a close call, this Court finds that material issues of fact preclude summary judgment for Plaintiff.

Florida contends that the registration-warning provision serves a compelling interest: "protecting voters by regulating voter registration." ECF No. 215-1 at 15. Defendants have also submitted at least some evidence suggesting that the registration-warning provision could advance that interest. *See* ECF No. 214-43 at 5 n.1 (testimony by the Director of the Division of Elections describing instances in which third-party voter registration organizations returned voter registrations after book-closing). To be sure, Plaintiff vehemently contests Defendants' assertions, but that is all the more reason to address this issue once the record is fully developed.

"The right to vote freely for the candidate of one's choice is of the essence of a democratic society, and any restrictions on that right strike at the heart of representative government." *Reynolds v. Sims*, 377 U.S. 533, 555 (1964). Given what's on the line, the stakes are simply too high to exercise anything less than the

---

[9] This Court highlights the issue now to alert the parties that they will need to be prepared to address what standard applies at trial.

most scrupulous caution. The parties' motions for summary judgment are therefore **DENIED** as to Count II of Plaintiff's amended complaint.

Finally, for the benefit of this Court and to avoid any prejudice to Defendants at trial, **Plaintiff shall include in the pretrial stipulation due December 27, 2021, a list of each claim at issue and identify whether Plaintiff is proceeding with an as-applied or facial challenge—or both—as to each claim**. If neither designation is applicable, Plaintiff must so state. This Court requires notice of Plaintiff's position ahead of trial for purposes of focusing this Court's attention during the presentation of evidence.

**SO ORDERED on December 20, 2021.**

<u>s/Mark E. Walker</u><br>
**Chief United States District Judge**